```
 1  Douglas M. Shortridge
    3481 Valle Verde Drive
 2  Napa, CA  94558
    Telephone:  (707) 257-2260
 3  Facsimile: (707) 257-2260
    Email: dougs@callcp.com
 4
 5  Pro Se plaintiff
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| DOUGLAS M. SHORTRIDGE | ) | |
|---|---|---|
| | ) | No.  14-cv-04850  JCS |
| Plaintiff, | ) | |
| | ) | **MOTION FOR LEAVE TO FILE** |
| vs. | ) | **SURREPLY TO DEFENDANTS** |
| | ) | **REPLY MEMORANDUM** |
| FOUNDATION CONTSTRUCTION | ) | [DOCKET #65] |
| PAYROLL SERVICE LLC; FOUNDATION | ) | |
| SOFTWARE, INC.; AND | ) | |
| ASSOCIATIED BUILDERS AND | ) | |
| CONTRACTORS, INC. | ) | Honorable Chief Magistrate Judge |
| | ) | Joseph C. Spero |
| Defendants. | ) | Date: April 3, 2015 |
| | ) | Time:  9:30 a.m. |
| | ) | Location: Courtroom G, 15th floor |

   Plaintiff Doug Shortridge seeks leave to file a Surreply to Defendants' Reply in Support of Motion for Judgement on the Pleadings [Dkt. Document65] because Defendants have introduced new material and consequently an alternative possible understanding of the abstract idea proposed in their motion.  Plaintiff files this motion for leave to file a Surreply to respond to this new viewpoint.  The short proposed Surreply is included in Appendix A.

Dated: March 20, 2015                    Respectfully submitted,

                                         /s/ Douglas M. Shortridge

                                         Douglas M. Shortridge – Plaintiff in Pro Se

---

PLAINTIFF'S MOTION TO FILE SURREPLY           CASE NO.: 3:14-cv-04850 JCS

PAGE 1

# Appendix A

Douglas M. Shortridge
3481 Valle Verde Drive
Napa, CA  94558
Telephone:  (707) 257-2260
Facsimile: (707) 257-2260
Email: dougs@callcp.com

Pro Se plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DOUGLAS M. SHORTRIDGE )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FOUNDATION CONTSTRUCTION )<br>PAYROLL SERVICE LLC; FOUNDATION )<br>SOFTWARE, INC.; AND )<br>ASSOCIATIED BUILDERS AND )<br>CONTRACTORS, INC. )<br>)<br>Defendants. )<br>)<br>) | No.  14-cv-04850  JCS<br><br>**SURREPLY TO DEFENDANTS REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS**<br>[DOCKET #65]<br><br>Honorable Chief Magistrate Judge Joseph C. Spero<br>Date: April 3, 2015<br>Time:  9:30 a.m.<br>Location: Courtroom G, 15th floor |

In their Motion Defendants unwaveringly describe *a single* abstract idea to which the '933 patent's claims are directed. They repeatedly state it as "producing payroll records and reports for public works projects" [Dkt. 40 ECF PAGE #s: (lines)  7:4-5;  16:1-2 and 21;  17:12-13;  18:5;  19:12-12;  21:22-23;  23:5-6;  24:17].  They do not present any other description of their view of the abstract idea pertinent to the *Mayo/Alice test*.

However, in their Reply [Dkt. 65] after stridently reiterating this original abstract idea, something *materially new* is added.  It is a *cardinal change* significantly expanding the scope of abstract *idea(s)* proposed. Defendants characterize the combination as "...merely three articulations of the same abstract idea." [Dkt.65 6:4]  This is nothing more than an attempt to expand the whole by folding in the abstract idea of "payroll processing" into their original idea. For at least this reason surreply from Plaintiff is warranted.

PLAINTIFF'S SURREPLY              PAGE 1              CASE NO.: 3:14-cv-04850 JCS

When the Plaintiff first read Defendants' proposed abstract idea, i.e. "producing payroll records and reports for public works projects", he understood the two terms "records" and "reports" as separated into two categories consistent with his long-time view of his own invention. Plaintiff read the original abstract idea as two separate realms because there *are* in fact two general categories of useful products which the invention produces and which are *related to public works projects*;  1.) Core payroll process data *records*, and;  2.) Non-core payroll related management supporting *reports*. These two overlap slightly in some ways, but as general categories these are descriptive.[1] These two categories are not one and the same, nor by any means completely interchangeable as further explained in this paper.

Yet it is clear now in considering further Defendants' Motion and Reply, they have always looked at it much differently than Plaintiff's two-category view. The new version of abstract idea proposed in Defendants' reply makes clear they saw originally, and now see even more expansively, the whole as all together one big abstract realm. Yet this whole is not reasonably just a "fundamental economic concept" such as "payroll processing". Nor is it just a "record-keeping concept" because it includes payroll processing. Further, there is a significant amount of "organizing human activity" in the non-payroll reports category as shown below and this isn't even addressed by Defendants in the first place. In short, there is no clear category for what Defendants now propose as *the* abstract idea to which the invention as a whole is directed.

The *final elements* of independent claims 1, 12, and 20 and the associated dependent claims 3, 4, 5, 6, 7, 9, 11, 17, 18, 19, 21, 22, 23, and 24 enlighten the whole "non-payroll processing" realm of the invention. This realm is a substantial portion of the '933 patent.

Defendants now combine the fundamental economic concept of "payroll processing" with "producing payroll records *and reports* for public works projects" as a new and more expansive abstract idea. And yet there is even more to it than this because the new version also necessarily includes the abstract idea of "organizing human activity"[2].

What is being proposed in this new amalgam abstract idea is undefined with no reasonably clear boundaries. This type of thinking taken to the extreme would end as the abstract idea of "the universe". And from there, because everything is part of "the universe",

---

[1]  E.g. An "overlap" could be that a payroll "record" may be used as a management "report".
[2]  Apprentice/Journeyman dispatch to projects for correct ratio compliance is one of these, see Claims 1,11,12,18,20,21.

nothing in it is patentable.  This is along the same lines as "swallowing up innovation" as the Supreme Court cautioned against.  Here the "tread carefully" admonishment is surely applicable.

An ineligible abstract idea shouldn't be all that difficult to define at this point in legal history. It is one thing to use different words to describe the same thing and quite another to use Alice Step 2 ingredients to cover up the inability to clearly describe the abstract idea in the first place. Apparently, to mask the improper shoe-horning effort, Step 2 analysis bits are constantly added into the mix of Defendants argument.  The complexity and difficulty in their step one definition is a good sign that there is "something more" going on with this invention beyond "payroll processing" or "producing payroll records and reports for public works projects".  And they are silent on the "organizing human activity" issue previously mentioned.

It would be disingenuous to suggest the most valuable product of the '933 invention is not the CPRs or that the fundamental problem which Plaintiff was motivated to solve was not largely focused on that area.[3]  Plaintiff may have overly focused upon this in his attempt to respond to the Motions.  With the change of abstract idea proposed in the Reply however focus has shifted to the broader viewpoint because the new abstract idea is also broader.

Defendants obviously do not grasp the invention as a whole.  If they did they would not only focus on the CPRs as *the* record keeping part of "payroll processing", or "producing payroll records and reports for public works projects as *only* being about "producing CPRs."  They have been silent regarding non-payroll management report generation claimed in the patent.

The '933 patent embodies an invention which creates *two fundamental types of* public works project reports. These are payroll *records* (one type of report) *and* non-payroll record reports (another type of report). The second category includes management supporting reports which are related to one public works project, or all public works projects (during a given period of time), or all projects, public or privately funded, or even other non-project specific work assignments.  It does this *in conjunction with and simultaneously with*, actual core payroll processing.  This is what the claims say.  Upon apprehending the invention as a whole, it is very easy to see there is "something more" added to the technology of automated payroll processing. The invention is exactly the type the Supreme Court cautions against invalidating in *Alice*.

---

[3] Plaintiff's realm of livelihood was exceedingly complex regarding laws, practices, market corruption, etc. in the pertinent industry which the invention is useful. These all contributed to the discovery and invention of the '933 process (i.e. "necessity is the mother of invention").

In some cases, these other reports are directly connected to statutory requirements. For instance, California Labor Code §1777.5[4] requires the contractor to employ apprentices within a minimum and maximum ratio related to journeymen in the same craft, classification, or type of work.[5] This is not "payroll processing" information per se, as the rates and hours for whatever the craft worker performed are really the *only things required* to process the payroll. The designation of the type of work is not a "core" payroll issue. It may be an "organizing human activity" issue, but it's not a "payroll processing" issue. Yet the same information *is required* for CPRs which do require some of the "payroll processing" information.

It goes further. Under the statute, in subparagraphs (e), (f), and (g) for example, the rules governing the reporting of how many hours of apprentice work and journeyman work in the craft are initially estimated or projected to occur, and subsequently, how many hours of this type of work actually took place. These types of reports can be produced in whole or in part from the data involved in the production of CPRs. Yet the employment of apprentices in a 5:1 or 1:1 (or any ratio between those) is not an issue of payroll processing at all. Even if an incorrect ratio is directed by management, the pay of the apprentices and journeyman is still required. So in this respect, these reports are an issue of "organizing human activity" certainly, but that is yet another abstract idea to consider in the whole. In this case, the "organizing" is done by harvesting data required both intrinsically and extrinsically to the core payroll processing in conjunction with producing the jurisdiction-specific and project-specific CPRs. This is the type of "something more" protected by the Mayo/Alice law. (See Fn.2)

Another thing related to this portion of the statutory scheme in California is that pursuant to Labor Code §1777.5(m)(1)(A), there is a type of "pass through tax", which is *not* actually a payroll processing item at all, nor is it a tax on the worker or the contractor employer. It is a scheme which channels tax-payer monies through the construction contract funding pool, in correct proportion to the type, classification, or craft work done, to train the future workforce. In other words, if there is a project with 1000 hours of carpentry work, 500 hours of plumbing work, and 250 hours of electrician work and if each "training contribution" is set in the prevailing "wage" determination at $1 per hour (keeping in mind this is not really a "wage" at

---

[4] See California Labor Code §1777.5 page 60 of Exhibit 3 (B-2) Response.
[5] See California Labor Code §1773 page 51 of Exhibit 3 (B-2) Response. Also §§ 1773.1, 1773.11, 1773.2, 1773.4, 1773.9.

all) then the tax-payer funds in the construction fund pool will be allocated in the following proportions to train the future workforce; $1000 to train carpenters, $500 to train plumbers, and $250 to train electrician.  It is simply a scheme to distribute training funding in direct proportion to the real-world construction realm as to how many man hours are needed per craft, classification, or type of worker in the construction sector.  (See claim 5.)

Defendants stridently argue "the" abstract idea. Conversely, they absolutely avoid anything which could be construed as "something more" on that idea.  Their chief method for doing this is to recite things like "you can do these well-known payroll records with a pen and paper".  They never deal with anything beyond such rudimentary argument.  The invention of the '933 patent is so much more than what they characterize and it only takes a few hours of searching the laws and imagining the management of a contracting company operating on several projects in several jurisdictions, all being manned by the same commuting personnel.  With this viewpoint in mind, reading claims in light of the specification will show just how far the '933 invention goes beyond any simply defined abstract idea which may be involved.

It doesn't matter how simple or elegant the process may appear to be under the clear light of hindsight bias.  What matters is whether or not the project as a whole is drawn to a single abstract idea, and if so, if there is "something more" to reach patent eligibility.[6]  The '933 patent is a perfect example of a multi-use process which embodies just that.  It is a substantial improvement upon the technology of processing payroll for public works construction contractors which results in much more than just the payroll being processed and records of that process being produced.  This is true even if there are several abstract ideas from which to choose, with each being tested as the primary one under *Mayo/Alice*.


Dated:  March 20, 2015                      Respectfully submitted,
                                            /s/ Douglas M. Shortridge
                                            Douglas M. Shortridge – Plaintiff in Pro Se

---

[6] The invention covers many other non-payroll category reports as well such as "employee morale", "estimated payroll billing for project direct-cost accounting", etc.  All are formed through processing of the same raw input data required for the CPRs production in conjunction with, and simultaneous with, core payroll processing.