UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS MAURICE SHORTRIDGE,<br><br>Plaintiff,<br><br>v.<br><br>FOUNDATION CONSTRUCTION PAYROLL SERVICE, LLC, et al.,<br><br>Defendants. | Case No. 14-cv-04850-JCS<br><br>**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Re: Dkt. No. 76 |

## I. INTRODUCTION

Plaintiff Douglas Shortridge, pro se, brought this action against Defendants Foundation Construction Payroll Service, LLC (d/b/a Payroll4Construction.com), Foundation Software, Inc., and Associated Builders and Contractors, Inc. (collectively, the "Foundation Defendants"), as well as related cases against additional defendants, alleging infringement of U.S. Patent No. 8,744,933 (the "'933 patent"). The Foundation Defendants and the defendants in a related case (the "ADP Defendants") each brought a motion for judgment on the pleadings, arguing that the '933 patent was invalid because it was directed to ineligible subject matter—an abstract idea—and therefore fell outside the scope of patent protection under 35 U.S.C. § 101 and the Supreme Court's decision in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014). Shortridge settled his case against the ADP Defendants before the motions were resolved, but the Court granted judgment in this case for the Foundation Defendants and held the '933 patent invalid. *See* Order (dkt. 73).[1]

Shortridge now moves to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, claiming various procedural and substantive errors. The Court

---

[1] *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14–cv–04850–JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015).

1  previously found the matter suitable for resolution without oral argument and vacated the hearing
2  scheduled for June 19, 2015. *See* dkt. 83. For the reasons stated below, Shortridge's Motion is
3  DENIED.[2]

## II.   BACKGROUND

This Order assumes the parties' familiarity with the '933 patent, the history of this action, key decisions of the Supreme Court and the Federal Circuit addressing the "abstract idea" exception to patent eligibility under § 101, and this Court's previous Order, which discusses all of the above in more detail.

In brief, Shortridge applied for and received the '933 patent, which claimed various methods and systems related to the creation of certified payroll records ("CPRs") and other aspects of payroll processing for public works construction projects. He brought a number of actions in this Court alleging infringement by various parties, including this case against the Foundation Defendants. The Foundation Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the '933 patent fell outside the scope of patent eligibility under § 101, and was therefore invalid, because it was directed to an abstract idea. The ADP Defendants filed a similar motion, and the Court ordered the parties to coordinate a schedule to hear both motions on the same date.[3] Shortridge filed a consolidated opposition, and the Foundation Defendants and ADP Defendants each filed a reply. With leave of the Court, Shortridge filed a surreply. Shortridge and the ADP Defendants settled their dispute before the motions were resolved.

Both sets of defendants relied heavily on the Supreme Court's decision in *Alice*, which held that patents describing a system of computer-based intermediated settlement in financial transactions were invalid because they were directed to an ineligible abstract idea. *See Alice*, 134 S. Ct. at 2352, 2360. The Supreme Court applied a two-step framework set forth in its earlier

---

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[3] The schedule ultimately adopted allowed Shortridge thirty-seven days from the date of the Foundation Defendants' motion to file his opposition—more than twice the standard time provided by the Court's local rules.

decision in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012): first, whether the claims at issue are directed to a patent-ineligible concept, and second, if so, whether they add any "inventive element" to that concept sufficient to bring it within the realm of patent protection. *See Alice*, 134 S. Ct. at 2355 (summarizing *Mayo*). At the second step, the *Alice* Court notably held that merely requiring "a generic computer to perform generic computer functions" did not suffice. *See id.* at 2359. Because the patents did "not, for example, purport to improve the functioning of the computer itself [or] effect an improvement in any other technology or technical field," the Court held that they did not add an inventive element to elevate the claims beyond ineligible abstract ideas. *Id.* at 2359–60. In the wake of *Alice*, the Federal Circuit has invalidated a number of other computer-based patents under the "abstract ideas" doctrine. *See generally, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (patents describing a method of extracting, recognizing, and storing digital data from scanned hard copy documents); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (patent reciting eleven steps to receive and display copyrighted material on the internet in exchange for viewers watching advertisements, and to receive payment from the advertiser).

Relying on the authority discussed above, among other case law, the Court held in this case that the '933 patent was directed to the abstract idea of cataloging labor data and failed to add an inventive element beyond using generic computer components to perform generic computer functions. *See* Order at 16−21. The Court therefore found the '933 patent invalid as outside the scope of § 101, granted the Foundation Defendants' motion, and entered judgment in their favor. *See id.* at 23.

Shortridge now moves to alter or amend that judgment pursuant to Rule 59(e). *See generally* Mot. (dkt. 76). He first argues that the Court erred by allowing the Foundation Defendants and ADP Defendants to file separate reply briefs after Shortridge filed a consolidated opposition. *Id.* at 3−6. Shortridge believes that the two motions were consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure, and that separate replies were therefore improper. *See id.* at 2, 5. Substantively, Shortridge argues that the Court's Order failed to adequately address the '933 patent's potential for preemption, and that the Court inadequately or erroneously

3

addressed a number of terms and concepts in the '933 patent, including "core payroll," "payroll technology," and the creation of CPRs "in conjunction with and simultaneously with" core payroll processing. *Id.* at 6−10. He also contends that the Court improperly combined the two steps of *Alice*'s analytical framework, and that the Court failed to hold the Foundation Defendants to their burden of persuasion. *Id.* at 10−12. Finally, Shortridge argues that the judgment should be set aside pending resolution of another case presently on appeal before the Federal Circuit. *Id.* at 13.

The Foundation Defendants respond that Shortridge's present Motion improperly "seeks to relitigate matters previously considered and decided." Opp'n (dkt. 81) at 2. They go on to argue that the Court specifically addressed each of Shortridge's present substantive arguments either in its previous Order or at the hearing on the motion for judgment, *see id.* at 3−6, and that the mere possibility that a pending appellate case could address relevant issues of law is not a reason to set aside judgment, *id.* at 6−7. Finally, the Foundation Defendants argue that Shortridge's present Motion misunderstands the nature of related cases, as opposed to matters consolidated under Rule 42, and that even if there had been error in allowing unconsolidated reply briefs, Shortridge suffered no prejudice as a result of that procedural issue. *Id.* at 7−9.

In his present Reply, Shortridge addresses only the issue of the Defendants' unconsolidated reply briefs, and does not pursue any of the other arguments from his Motion. *See generally* Reply (dkt. 82).

### III. ANALYSIS

#### A. Legal Standard

Rule 59(e) provides that a party may file a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). The Ninth Circuit has explained the standard for a motion under Rule 59(e) as follows:

> "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted). But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id*. (internal quotation marks omitted). In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to

4

present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id.*

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1112 (9th Cir. 2011). This Rule "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been made prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted). In this case, Shortridge relies mainly on the first and third grounds for relief, claiming manifest error and injustice. *See* Mot. at 2.

### B. Defendants' Separate Replies

Shortridge argues that it was unfair to allow the Foundation Defendants and the ADP Defendants to file separate reply briefs after Shortridge filed a consolidated opposition brief. *See* Mot. at 3−6. This appears to be Shortridge's primary argument for relief, as it is the only argument addressed in his Reply. *See generally* Reply.

Shortridge had ample opportunity to raise this argument before the Court entered judgment for the Foundation Defendants, either in his surreply—which the Court granted to leave to file and considered in reaching its decision—or at the hearing on Defendants' motion for judgment. He failed to do so before his present Motion, filed nearly one month after the entry of judgment. Accordingly, because the argument "could have been made prior to the entry of judgment," Shortridge cannot raise it for the first time after judgment under Rule 59(e). *See Exxon Shipping*, 554 U.S. at 485 n.5. To the extent that Shortridge bases his motion on Defendants filing separate replies, it is denied as procedurally improper.

Further, even if the argument had been properly raised, there is no indication of any error by the Court or prejudice to Shortridge, much less the "manifest error" or "manifest injustice" required for relief under Rule 59(e). *See Allstate*, 634 F.3d at 1112. Contrary to Shortridge's assertions, the Court did not consolidate the two actions or the two motions pursuant to Rule 42. Although Shortridge discussed consolidation at the February 13, 2015 case management conference, the Court merely "ask[ed] [the parties] to work out a scheduled coordinating the other hearing with this case." Feb. 13, 2015 Tr. (dkt. 79) at 6:11−12. The Court did not order Shortridge to file a consolidated opposition to the two *Alice* motions, did not order Defendants to

1  file a consolidated reply, and did not invoke Rule 42 in any way.  *See id.*  Shortridge is correct that
2  the scheduling order proposed by Defendants on February 26, 2015 and adopted by the Court the
3  following day uses the singular terms "opposition" and "reply" in setting deadlines for "Shortridge
4  to file opposition to *Alice* motions" and "Defendants to file reply to *Alice* motions."  *See* dkts. 60,
5  62.  However, the Court would require a far more explicit indication of Defendants' intent before
6  construing that proposed schedule as waiving their rights to file separate replies, and certainly
7  would not so casually deprive Shortridge of his prerogative to respond separately to each motion.
8  Any confusion caused by the proposed and adopted scheduling order is regrettable, but does not
9  warrant setting aside the judgment.

10  Even if the scheduling order was misleading, Shortridge was not prejudiced in any way
11  that would justify the extraordinary remedy of post-judgment relief.  The Court's Order granting
12  the Foundation Defendants' motion for judgment does not rely on or even cite the ADP
13  Defendants' reply brief.  *See generally* Order.  To the extent that Shortridge nevertheless believes
14  Defendants received an unfair advantage by filing two reply briefs, or that he was improperly
15  constrained to a single opposition brief, any such harm was cured by the Court allowing
16  Shortridge to file a surreply.  *See id.* at 1 (granting leave to file surreply); *see generally* Surreply
17  (dkt. 60).  Given that Shortridge did not see fit to raise the issue of dual reply briefs in his surreply,
18  at the hearing, or in any other manner before entry of judgment, his present claim of severe
19  prejudice rings hollow.

20  The Court finds neither manifest error in its administration of the case nor manifest
21  injustice in the ADP Defendants and Foundation Defendants filing separate reply briefs.  Even
22  setting aside the procedural impropriety of Shortridge waiting until after judgment to raise it, this
23  issue provides no basis for relief under Rule 59(e).

### C.   *Alice* Analysis

25  Shortridge raises three categories of purported errors in the Court's analysis of the '933
26  patent under *Alice*: failure to adequately address the potential for preemption, failure to properly
27  consider the '933 patent's relationship to terms and concepts such as "core payroll processing" and
28  "payroll technology," and failure to adequately distinguish the two steps of the *Alice* analysis.  *See*

6

1   Mot. at 6−11. Shortridge does not pursue or elaborate on any of these arguments in his Reply.

2   All of these arguments are improper attempts to "relitigate old matters, or to raise arguments or present evidence that could have been made prior to the entry of judgment." *See Exxon Shipping*, 554 U.S. at 485 n.5. Shortridge could have, and in many cases did, raise these arguments in his opposition brief and surreply and at the hearing on the motion for judgment. They therefore provide no basis for post-judgment relief under Rule 59(e), and are denied on that basis. The Court nevertheless briefly addresses the merits of each argument below.

### 1. Preemption

Shortridge asserts that the Court's Order erred by "only vaguely and without context treat[ing] the issue of whether the '933 patent risks unlawful preemption of the abstract idea 'cataloging labor data.'" Mot. at 6−7 (citing Order at 21) (emphasis omitted).

Shortridge correctly notes that, in *Alice*, the Supreme Court "described the concern that drives this exclusionary principle [against patenting abstract ideas] as one of pre-emption." *Alice*, 134 S. Ct. at 2354. The concern that motivates the test, however, is not the same as the test itself. The test set out in *Mayo* and *Alice* is first, whether the "whether the claims at issue are directed to a patent-ineligible concept," and second, "whether [the claim] contains an "inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2355, 2357 (citation omitted). While courts must "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," *id.* at 2354 (citation omitted), no part of the *Alice* test requires a court to examine the scope of any specific patent's potential for preemption.

The Court's previous Order properly considered whether the '933 patent was directed to an abstract idea and whether there was "something more" that could bring it within the scope eligibility. *See* Order at 16−21. The Court held that the '933 patent was directed to the idea of cataloging labor data (and noted Shortridge's concession that it was directed to an abstract idea), *id.* at 16−19, and held that it failed to add anything more than generic computer technology, which is not sufficient under *Alice*, *id.* at 19−21 (citing, *e.g.*, *Alice*, 134 S. Ct. at 2359−60). That alone is enough to find the '933 patent invalid as outside the scope of § 101, regardless of how broad or

narrow its potential for preemption.

The Court did, however, also note the '933 patent's "potential to preempt virtually any use of relational databases (a standard method of organizing computer-based data) in the public works labor context." *Id.* at 21.  Although Shortridge now asserts that the extent of the Court's preemption analysis was insufficient, he notably fails to offer any argument whatsoever rebutting the Court's conclusion—that the '933 patent could "preempt virtually any use of relational databases . . . in the public works labor context." *Id.*; *see also* Mot. at 6−7.  The Court therefore finds no "manifest error" or "manifest injustice" justifying the "extraordinary remedy" of post-judgment relief under Rule 59(e).  *See Allstate*, 634 F.3d at 1112.

### 2. "Core Payroll" and "Payroll Technology"

Shortridge makes a number of arguments generally related to the Court's treatment of the concepts of "core payroll" and "payroll technology" in relation to the '933 patent.  *See* Mot. at 7−10.

First, he argues that the Court did not adequately consider references in various claims of the '933 patent to producing CPRs and other reports "in conjunction with and simultaneously with" core payroll processing.  *Id.* at 7−8.  Shortridge offers no coherent explanation for why the use of that phrase should render his patent valid.  The Court held that the '933 patent is directed to the abstract idea of "cataloging labor data" using a computer, a form of "'categorical data storage'" and "'electronic recordkeeping—one of the most basic functions of a computer,'" ineligible for patent protection under Supreme Court and Federal Circuit precedent.  *See* Order at 17, 20, 23 (quoting *Alice*, 134 S. Ct. at 2359; *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014)).  Basic multitasking does not "override[] the routine and conventional" operation of a computer.  *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).  Nor does it "purport to improve the functioning of the computer itself [or] effect an improvement in any other technology or technical field." *See Alice*, 134 S. Ct. at 2359−60.  Accordingly, the fact that the '933 patent describes a system to tailor labor data for one purpose "in conjunction with and simultaneously with" another purpose does not, in itself,

1  bring it within the realm of eligibility under § 101.[4]

2  Second, Shortridge argues that the Court's Order misconstrued the relationship between public works payroll processing and the creation of CPRs. Mot. at 8−9. He focuses on the Court's statement that "'[c]ertain elements of CPR reporting are universally required for any payroll processing,'" and from that infers that "the court understands the invention to be saying, in effect, that payroll for public works *cannot be processed without* first (or even simultaneously) producing CPRs"—a conclusion that Shortridge characterizes as "dead wrong." Mot. at 8−9 (quoting Order at 2). Shortridge misinterprets the Court's statement. The Court's understanding was, and remains, merely that core payroll administration and the creation of CPRs draw on some common data elements, such as the number of hours worked in a given period, as well as other data that might be specific to one application or the other. Shortridge does not suggest anything to the contrary in his current Motion, nor does he explain how any misunderstanding of this issue would undermine the Court's conclusion that the '933 patent describes an application of routine computerized recordkeeping that is ineligible for patent protection.

Third, Shortridge asserts that "a key element of the invention, 'core payroll', is not separately treated" in the Court's Order, and inquires whether that concept is "embodied in the Court's abstract idea; 'organizing labor data.'" *Id.* at 9.[5] In short, yes, it is. The Court's previous Order specifically rejected Shortridge's argument that various applications of the '933 patent, including "payroll processing" and "producing payroll records and reports for public works processing," constituted distinct abstract ideas, and held instead that "even viewing the claims in the light most favorable to Shortidge, the '933 patent is directed to the unitary abstract idea of cataloging labor data." Order at 17. The Court went on to note that "[e]ven if that were not so . . . the Court is aware of no case holding that merely combining two or three abstract ideas brings a patent within the scope of § 101," and held that "using routine organization of data to serve a

---

[4] As the Foundation Defendants note in their Opposition, the Court rejected this very argument at the hearing. *See* Opp'n at 3−4 (quoting Apr. 3, 2015 Tr. (dkt. 80) at 17:22−18:24).
[5] Shortridge acknowledges that this "issue may never have been treated extensively in Shortridge's Response or surreply." Mot. at 9. Arguments that "could have been made prior to the entry of judgment" cannot support a motion under Rule 59(e). *See Exxon Shipping*, 554 U.S. at 485 n.5.

handful of different purposes" is not inherently patentable. *Id.* at 17, 18; *see also id.* at 16 ("The fact that [labor] data can be used for multiple purposes—such as 'core' payroll processing, generating CPRs, monitoring apprentice-to-journeyman rations, and calculating training fund contributions—fails to negate the abstraction of the underlying process."). Shortridge presents no coherent argument why that conclusion is clearly erroneous.

Finally, Shortridge argues that the Court failed to properly recognize "Payroll Technology" as a technical field, or at least failed to "meaningfully" address the issue. *See* Mot. at 9−10. In its previous Order, the Court noted that although "many employers now use technological methods to track [employees'] hours," the '933 patent itself acknowledges that employers are also capable of doing so using non-technological means, and have done so for decades. Order at 17. The Court also observed that Shortridge's argument—essentially, that modern payroll management is so dominated by technology that any patent related to that field satisfies § 101—is not consistent with *Alice*. *See id.* In that case, the Supreme Court held that a patent for computerized intermediation of financial transactions was invalid as directed to an abstract idea, even though the modern financial industry is, if anything, rooted even more firmly in technology than modern payroll processing. *See id.* (discussing *Alice*, 134 S. Ct. at 2356). Shortridge's present argument that "Payroll Technology is a category unto itself as evidenced by a simple search of the term" does not alter that conclusion. *See* Mot. at 10.

### 3. Purported Conflation of Steps

Shortridge contends that the Court erred by conflating or coalescing the two analytical steps set forth in *Mayo* and *Alice*. Mot. at 10−11. Although the Court's previous Order explicitly analyzed each step separately, *see* Order at 16−21, Shortridge focuses on the Court's acknowledgment that "[s]ome courts have suggested that these two steps tend to coalesce in their application," and the Court's reference to "reasons previously discussed" at the outset of its analysis of the second step. *See* Mot. at 10−11; Order at 12, 19.

The confusion here stems from Shortridge's own argument, in opposition to Defendants' *Alice* motions, that the '933 patent withstood *Alice* because it was directed to "a *plurality* of abstract ideas." *See* Order at 17 (quoting Shortridge's opposition brief). That argument could be

construed as an issue at the first step: that the patent is not directed to *an* abstract idea, because it is instead directed to *many* abstract ideas. It could also be construed as an argument for the second step: that although the patent is directed to an abstract idea, it also adds "something more"—additional abstract ideas. Because the various permutations of the argument are intertwined, the Court addressed the "plurality of abstract ideas" issue primarily in the context of the first step, determining that the entire patent was essentially directed to the single abstract idea of cataloging labor data, and that even if there were a plurality of abstract ideas, that would not satisfy § 101. *Id.* at 17−18. At the second step, the Court referred back to its earlier analysis to reaffirm that the "something more" required by *Alice* does not mean more abstract ideas, and then went on to determine that the '933 patent adds nothing *else* more besides generic computer hardware and software, which is also insufficient to survive *Alice* scrutiny. *Id.* at 19−21; *see also id.* at 23 (summarizing Supreme Court and Federal Circuit precedent regarding generic computer technology). Shortridge's present Motion does not identify any manifest error in the Court's application of *Alice*'s analytical framework. Moreover, Shortridge fails to articulate how a different analytical structure would have led to the denial of the Foundation Defendants' motion for judgment.

### D. Burden of Persuasion

Shortridge also argues that the Court failed to hold the Foundation Defendants to their burden of persuasion that the '933 patent is invalid. Mot. at 12. The Court determined that in evaluating a motion for judgment on the pleadings based on *Alice* and § 101 ineligibility, "the clear and convincing evidence standard is not applicable [but] Defendants, as the parties moving for relief, still bear the burden of establishing that the claims are patent-ineligible." Order at 11 (quoting *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at \*7–8 (C.D. Cal. Mar. 17, 2015)). According to Shortridge, the Court's Order was not sufficiently explicit in crediting the Foundation Defendants with explaining why Shortridge's patent was directed to an ineligible abstract idea. *See* Mot. at 12 ("Foundation Construction Payroll Services, Inc. et. [sic] al. are not referenced in this critical area of validity analysis even once. Shortridge on the other hand is referenced some eighteen times.").

This argument, like the arguments above, improperly seeks to "relitigate old matters." *See Exxon Shipping*, 554 U.S. at 485 n.5. Shortridge had ample opportunity to explain in his opposition brief and at the hearing why he thought the Foundation Defendants failed to meet their burden, and in fact made several arguments to that effect. The Court disagreed, holding that the Foundation Defendants "have sufficiently explained that the '933 patent is directed to the abstract and established business practice of organizing labor data to comply with public works law." Order at 22. The Court went on to explain that "the fact that Defendants in this case, the defendants in the related *ADP* case, and now the Court each articulate the underlying abstract idea somewhat differently is of little consequence." *Id.* (citing *Tenon & Groove, LLC v. Plusgrade S.E.C.*, No. CV 12-1118-GMS-SRF, 2015 WL 1133213, at *3 (D. Del. Mar. 11, 2015)). The Court finds no manifest error or injustice in its conclusion that the Foundation Defendants met their burden of establishing ineligibility.

### E. Pending Federal Circuit Litigation

Finally, Shortridge argues that a case currently pending before the Federal Circuit "should clarify the Alice/Mayo test when resolved." Mot. at 13 (citing the pending case *McRo Inc. v. Bandai Namco Games Am., Inc.*, No. 15-1080 (Fed. Cir.)). Although "an intervening change in controlling law" may warrant amending or setting aside a judgment, *see Allstate*, 634 F.3d at 1112, the mere possibility of such a change does not. The judgment entered in this case was based on applicable Supreme Court and Federal Circuit precedent. Shortridge has not identified any actual change in the controlling law that would justify altering that judgment.

### IV. CONCLUSION

For the reasons stated above, Shortridge has failed to identify any manifest error, manifest injustice, newly discovered evidence, or change in controlling law. His present Motion is therefore DENIED. *See Allstate*, 634 F.3d at 1112. The Court declines to alter the judgment previously entered in favor of the Foundation Defendants.

**IT IS SO ORDERED.**

Dated: June 23, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge